## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **YOLANDO D. WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:25-cv-624-EGL** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| ***Commissioner of Social Security***, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Yolando D. White seeks judicial review of the Commissioner of Social Security's denial of her application for disability benefits. White argues that the ALJ erred in failing to expressly account for White's alleged use of a cane, that the vocational expert's testimony was mistaken and thus did not constitute substantial evidence upon which the ALJ was entitled to rely, and that the Appeals Council erred in denying White's request for review. After carefully reviewing the administrative record and the parties' briefs, the Court **AFFIRMS** the Commissioner's decision.

## BACKGROUND

### A. Procedural Background

In June 2021, White filed a claim for a period of disability and disability insurance benefits, alleging she became disabled on June 30, 2017. Doc. 6-2 at 39. White's date last insured (DLI) for disability insurance benefits was December 31, 2022, and to be eligible for disability insurance benefits, White needed to prove she became disabled prior to the expiration of her DLI. Doc. 12 at 2. After her claim was denied initially and upon reconsideration, White filed a request for a hearing. Doc. 6-2 at 39. The ALJ found White was not disabled under sections 216(i) and 223(d) of the Social Security Act from June 30, 2017, through December 31, 2022. *Id.* at 39, 53. The Appeals Council denied White's request for review, rendering the ALJ's decision final. *Id.* at 3-6; *see* 20 C.F.R. § 404.981. White exhausted her administrative remedies and timely filed this action. The Court thus has jurisdiction under 42 U.S.C. § 405(g).

### B. Factual Background

White alleges her disability began on June 30, 2017, Doc. 6-30 at 5, due to a variety of medical conditions that caused her to leave her job as an education supervisor, Doc. 10 at 3. White has a college education and has past relevant work as school administrator. Doc. 6-31 at 7. She was 48 years old on the alleged onset date. Doc. 6-30 at 5.

2

**ALJ DECISION**

To determine whether a claimant is disabled, an ALJ applies a five-step sequential evaluation process. The ALJ must assess whether the claimant (1) is currently engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals the severity of a listed impairment; (4) can perform any past relevant work; and, if not, (5) can adjust to other work that exists in significant numbers in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

At step one, the ALJ found that White had not engaged in substantial gainful activity during the relevant period: her alleged onset date through her date last insured. Doc. 6-2 at 41. At step two, the ALJ determined that White had the following severe impairments: obesity, osteoarthritis, cervical degenerative disc disease, degenerative joint disease, trochanteric bursitis, diabetes mellitus, contact dermatitis, depression, anxiety disorder, and persistent mood disorder. *Id.* The ALJ concluded at step three that none of White's impairments, alone or in combination, met or medically equaled a listed impairment. *Id.* at 44-46.

Before step four, the ALJ must determine a claimant's residual functional capacity (RFC) which is an assessment of the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his relevant impairments. *See* 20 CFR § 404.1545(a). Here, the ALJ considered the entire record

and found that during the relevant period, White had the RFC to perform a range of light work, except that she could occasionally climb ramps or stairs. Doc. 6-2 at 46-52. White could never climb ladders, ropes or scaffolds, can occasionally stoop, kneel, crouch, or crawl, and can frequently reach bilaterally. *Id.* at 46-47. In addition to other limitations, the ALJ found that White could not perform work requiring a specific production rate, and while she could understand, remember and carry out detailed instructions, she could not carry out complex instructions. *Id.* at 47. Finally, the ALJ found that she could deal with occasional changes in the work setting. *Id.*

At step four, the ALJ determined that White could no longer perform her past relevant work as a school principal. *Id.* at 52-53. The ALJ moved on to step five and considered the vocational expert's testimony about the existence of jobs in the national economy that White could perform. *Id.* The ALJ concluded that through the DLI, White would have been able to perform the requirements of representative occupations such as mail clerk or deli worker, which existed in significant national numbers. *Id.* Based on these findings, the ALJ concluded that from June 30, 2017, through December 31, 2022, White had not been disabled as defined in the Social Security Act. *Id.* at 53.

## STANDARD OF REVIEW

Judicial review under the Social Security Act is narrow. The Court asks only whether the Commissioner's decision is supported by substantial evidence and rests on the correct legal standards. *Winschel*, 631 F.3d at 1178.

"[W]hatever the meaning of 'substantial' in other contexts," in the context of judicial review of social security decisions, the threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence exists where there is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). If that standard is met, the Court must affirm, "[e]ven if the evidence preponderates *against* the Commissioner's findings." *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

## DISCUSSION

White asks the Court to remand her case based on alleged failures of the ALJ and the Appeals Council. Specifically, White argues (1) the ALJ did not properly evaluate White's need for an assistive device; (2) the ALJ improperly relied on the VE's testimony and therefore his Step Five evaluation is not supported by substantial evidence; and (3) the Appeals Council erred in denying review. *See* Doc. 10 at 2.

## I.    Assistive Device

White argues that her "limited mobility and need for a cane or other assistive device was not adequately addressed by the ALJ" because "the ALJ did not address the extent to which she needs an assistive device, either in the RFC or elsewhere in the decision." *Id.* at 3. The ALJ must provide findings sufficient to enable the Court to conclude that the ALJ considered White's "medical condition as a whole," but "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782-83 (11th Cir. 2014).  In determining a claimant's RFC, the ALJ considers "all the relevant evidence" in the case record, including medical evidence and opinions, as well as a claimant's statements of her own symptoms. 20 C.F.R. § 404.1545(a)(1), (3). "[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors," *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010), and that determination is left to the ALJ's discretion, so long as the holding is supported by substantial evidence, *see Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008). Contrary to White's contention, the ALJ properly considered White's medical condition as a whole and did not err in determining White's RFC without reference to her alleged need for a cane.

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need," SSR 96-9P, 1996 WL 374185, at *7

(S.S.A. July 2, 1996), and "[w]ithout medical documentation establishing the need and describing the conditions for which an assistive device is required, an ALJ is not required to include the use of an assistive device in the claimant's RFC analysis." *K.C. v. Comm'r of Soc. Sec.*, No. 1:10-cv-181, 2021 WL 7906867, at *4 (M.D. Ga. Mar. 23, 2021).

White has not pointed to any evidence in the record showing the medical necessity of an assistive device. White outlines the "available" evidence—including her history of ganglion and ganglion excision surgery, Doc. 6-45 at 22-27, complaints about recurring foot pain, *id.* at 28-33, pain from foot cysts, Doc. 6-41 at 13, self-reported cane use, Doc. 6-40 at 95, difficulty standing and walking, Doc. 6-38 at 14,[1] and the fact that a cane was in her personal belongings at the hospital, *id.* at 68. This evidence shows self-reported pain, acute injuries treated with surgery and medication, and self-reported cane use. This does not establish the medical necessity of a cane, and the ALJ was therefore not required to account for an assistive device in determining White's RFC. *See Lyons v. Kijakazi*, No. 22-cv-60539, 2023 WL 8261261, at *5 (S.D. Fla. Feb. 28, 2023)

---

[1] White cites to an emergency department report to support her difficulty walking. *See* Doc. 10 at 4-5. This emergency visit was due to loss of bodily control from neurological issues. Doc. 6-38 at 14. And, at this appointment, the doctor noted normal gait and generally normal musculoskeletal findings. *Id.* at 16.

Further, substantial evidence supports both the ALJ's RFC determination and his decision. He considered White's functional limitations, her testimony regarding her pain, and properly evaluated her medical condition as a whole. The ALJ acknowledged White's testimony regarding body pain, and specifically pain in her feet, causing difficulty walking and other limitations. *See* Doc. 6-2 at 47-48. He contrasted this evidence with the record, which shows acute issues resolved with treatment or controlled with medication, *id.* at 48, White's own denials of gait abnormalities, *see* Doc. 6-34 at 125, 128, 130, 132-33; Doc. 6-36 at 64, 70, and multiple reports of normal gait, *see* Doc. 6-36 at 65; Doc. 6-38 at 16, 38; Doc. 6-39 at 79-80, 111-112, 119-120, 135.

White points out that a cane was in her belongings when she was admitted to the hospital, Doc. 6-38 at 68, but while at the hospital, a doctor examined White, did not note difficulty walking, and described her gait as normal, *id.* at 16. Only one week later, she appeared at a medical appointment without a cane, and the doctor noted normal gait and stance. *Id.* at 38. In light of this record, the ALJ did not err in failing to account for White's claimed need to use a cane. He found that her "alleged limited ability to walk" and consequent "extreme functional limitation[s]" were "inconsistent with and not supported by the objective medical evidence." Doc. 6-2 at 48. And, the ALJ found that White "was walking daily and living an active lifestyle" in April 2022, months after she appeared at the hospital and a medical

8

appointment with a cane, "which is not consistent with her allegations at the hearing." *Id.* at 48-49. Although the ALJ did not specifically address White's alleged need for a cane in the RFC analysis or elsewhere in the decision, the ALJ provided specific findings that allow the Court to conclude he considered White's medical condition as a whole and did not err in failing to account for her claimed need to use a cane. *See, e.g.*, *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 778 (11th Cir. 2016).

## II.    Vocational Expert Testimony

White challenges the ALJ's step-five finding that White could perform jobs that existed in significant numbers in the national economy. *See* Doc. 10 at 15-22; Doc. 6-2 at 52-53. At step five, the burden shifts to the SSA "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quotation omitted). When an ALJ relies on vocational expert (VE) testimony regarding representative occupations, the ALJ has an affirmative duty to "identify and resolve apparent conflicts between DOT data and VE testimony," which "is not fulfilled simply by taking the VE at his word." *Id.* at 1362. The Eleventh Circuit explained that a conflict is "apparent" when it is "reasonably ascertainable or evident, i.e., when it is seemingly real or true, but not necessarily

9

so." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021) (citation modified).

At the hearing, the vocational expert testified that a person with same RFC and limitations as White could work as a mail clerk, with 400,000 jobs nationally, deli worker, with 200,000 jobs nationally, or a hand trimmer, with 150,000 jobs nationally. Doc. 6-26 at 52. White's attorney did not inquire how the VE derived these numbers. *Id.* at 53-55. Relying on the VE testimony, the ALJ concluded that White "would have been able to perform the requirements of representative occupations such as a mail clerk, DOT Code 209.687-026, with approximately 400,000 jobs existing in the nation; and a deli worker, DOT Code 316.684-014, with approximately 200,000 jobs existing in the nation." Doc. 6-2 at 53.

White first argues that the decision is not supported by substantial evidence because the ALJ failed to identify an apparent conflict between the VE testimony as to "deli worker" and the DOT. The Court will not address whether there was an apparent conflict because, even if there was, the ALJ's alleged error does not warrant remand. When an apparent conflict concerning one job identified by the ALJ was not resolved, but the ALJ identified another job that exists in substantial numbers in the national economy, "the unresolved apparent conflict . . . was harmless" and the ALJ's decision should be affirmed. *See Acosta v. Acting Comm'r of Soc. Sec.*, No. 24-12495, 2025 WL 1672408, at *2-3 (11th Cir. June 13, 2025).

10

In addition to other light jobs and some sedentary jobs, the VE testified that someone with White's limitations could perform jobs "such as" "Mail Clerk, light, unskilled," with 400,000 of these jobs found nationally. Doc. 6-26 at 52. White, who was represented by counsel, acknowledged that the VE was qualified and did not challenge the job number testimony or question the expert's methodology used to reach that number. *Id.* at 51-55. Now, White argues that the 400,000 number is "fundamentally flawed." Doc. 10 at 18-19. According to White, that number "cannot be correct," based on the Occupational Employment and Wage Statistics for the Standard Occupational Classifications Group which covers mail clerks. *Id.*

As noted above, ALJs typically rely on the testimony of a VE at step five. And for purposes of this Court's review, VE testimony "may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, 587 U.S. at 105. Vocational experts often testify as to the number of available jobs and in doing so, may "invoke not only publicly available sources but also information obtained directly from employers and data otherwise developed from their own experience in job placement or career counseling." *Id.* at 100 (internal quotation marks omitted). The DOT is a publication that groups similar jobs and assigns each occupation a code number and is the source of an ALJ's determination of if there are job types a claimant can perform, but the DOT "provides no statistical information about the number of jobs

11

available in the national economy." *Ragusa v. Comm'r of Soc. Sec.*, No. 22-11935, 2023 WL 6319307, at *2 (11th Cir. Sept. 28, 2023).

Because the DOT provides no statistical information, VEs sometimes rely on the Occupational Employment and Wage Statistics (OEWS) program to estimate the number of jobs. *Id.* The OEWS compiles data using Standard Occupational Classification (SOC) codes and a single SOC code sometimes contains multiple DOT occupations. Because an SOC code contains multiple DOT occupations, a one-to-one correlation does not exist, and the VE must use some sort of method to associate SOC codes to DOT job types. *Id.* Critically though, there is no requirement that a VE refer to the OEWS to estimate the number of jobs, and since White did not ask the VE's methodology, the Court has no way of knowing if she referred to the SOC or if she relied on "information obtained directly from employers and data otherwise developed from their own experience in job placement or career counseling." *Biestek*, 587 U.S. at 100 (internal quotation marks omitted).

White relies on *Goode* to support her argument that the VE's testimony is "fundamentally flawed." *See* Doc. 10 at 18-19. But that case is not instructive here. In *Goode*, at the hearing before the ALJ, the claimant questioned the VE's methodology, prompting the VE to cite his sources and list the SOC code for the relevant job. *See Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279-80 (11th Cir. 2020). The claimant challenged the number, methodology, and continued to question

12

the VE testimony. *Id.* In reviewing the ALJ's decision, the Eleventh Circuit found that step five was not supported by substantial evidence due to the VE testimony's "several significant mistakes," including his citation to the wrong SOC code and his clearly mistaken methodology in calculating how many jobs within that SOC code matched up with the relevant DOT number. *Id.* at 1280-82.

Unlike in *Goode*, this *is* a case "in which the claimant failed to challenge or question the vocational expert's methodology or job numbers." *Id.* at 1284 n.3. Here, because White did not challenge the VE testimony or her methodology, we have no indication as to the expert's sources, her reason for using those sources, or how she calculated the specific number from those sources. The Court in *Goode* could evaluate the clearly flawed methodology because the VE explicitly cited the SOC and explained his methodology. *Id.* at 1280-82. That is not the case here. The VE gave no indication that she calculated job numbers using data from the SOC. White argues that, based on the SOC code, the VE's numbers are impossible. But her argument fails because there is no indication that the VE relied on SOC data, Doc. 6-26 at 51-55, and therefore no indication that the 400,000 number is impossible.

White presents the OEWS data regarding the SOC code for the mail clerk job, but because she did not present these statistics before the ALJ or object to the VE's testimony, the Court is "foreclosed from considering the data." *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020). The Court will only consider

"evidence actually presented to the ALJ," *id.* at 1009-10 (quoting *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)), and "therefore need not consider the jobs-data evidence that [White] submitted for the first time to the district court." *Acosta*, 2025 WL 1672408, at *2. Accordingly, the only evidence in the record as to the number of mail clerk jobs in the national economy is the testimony of the vocational expert.

The ALJ has an affirmative duty to identify and resolve apparent conflicts between the VE's testimony and the DOT, regardless of whether the claimant raises the issue, *Washington*, 906 F.3d at 1356, but there is no comparable obligation for an ALJ to identify and resolve inconsistencies between the VE's testimony and the figures provided by the Bureau of Labor Statistics in the OEWS, *see Webster v. Comm'r of Soc. Sec.*, 773 F. App'x. 553, 556 (11th Cir. 2019). The ALJ was entitled to rely on the VE testimony that 400,000 mail clerk jobs existed in the national economy, and he was not affirmatively obligated to resolve inconsistency between that testimony and the relevant SOC group data. Substantial evidence supports the ALJ's conclusion, *Biestek*, 587 U.S. at 105, and any alleged apparent conflict between White's RFC and the DOT description of the deli worker position was harmless, *Acosta*, 2025 WL 1672408, at *2.

Moreover, and independently, "[a] court will likewise consider whether the vocational expert limited the plaintiff to the specific jobs identified or whether the jobs identified were merely representative of a larger category of jobs that the

claimant could perform." *Smathers v. Comm'r of Soc. Sec.*, No. 2:14-cv-500, 2015 WL 401017, at *4 (S.D. Ohio Jan. 28, 2015) (citing *Riser v. Comm'r of Soc. Sec.*, No. 13-11135, 2014 WL 1260127, at *20 (E.D. Mich. Mar. 26, 2014)), *report and recommendation adopted*, No. 2:14-cv-500, 2015 WL 5568324 (S.D. Ohio Sept. 22, 2015). Here, the VE provided several "example[s]" of jobs that White could perform. Doc. 6-26 at 52. The ALJ then specifically referenced two jobs as "representative occupations," not the total universe of occupations, that White could perform. Doc. 6-2 at 53. Thus, the mail clerk "figures were merely representative of a larger category of jobs that [White] could perform," *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997), providing another reason why the ALJ's determination was supported by substantial evidence.

### III.   Appeals Council

Lastly, White argues that this Court should remand her case based on the Appeals Council's failure "to grant review despite the receipt of additional evidence." Doc. 10 at 25. White requested Appeals Council review of the ALJ decision and submitted additional evidence in support of her claim. *See* Doc. 6-2 at 3-4. The new evidence included records prior to White's DLI (December 31, 2022) and records postdating the relevant claim period. *Id.*

The Appeals Council's review is limited to certain instances, including when it "receives additional evidence that is new, material, and relates to the period on or

15

before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The Appeals Council will only review a case based on additional evidence when a claimant shows good cause for not submitting the evidence or informing the agency about the evidence. *Id.* at § 404.970(b).

The Appeals Council denied White's request for review, acknowledging the additional evidence she submitted. Doc. 6-2 at 3-4. It found that the chronologically relevant evidence did not show a reasonable probability of changing the outcome of the decision and that other additional evidence did not relate to the period at issue and therefore did not affect the ALJ's decision. *Id.* The Appeals Council was not required to provide a detailed discussion of White's new evidence in denying her request. *See Mitchell*, 771 F.3d at 783-84. White challenges a few aspects of the Appeals Council's denial.

### A. Cane/Walker Use Shortly After Claims Period

White contends the Appeals Council erred in finding that records showing cane and walker use shortly after the claims period were not chronologically relevant. Doc. 10 at 29-31; *see* Doc. 6-2 at 4. White's argument ignores an essential fact: she underwent knee surgery on December 29, 2022, Doc. 6-20 at 30, and the

16

records she submitted are related to that recovery, not to a condition she had during the relevant period.

In her brief, White cites physical therapy notes as additional post-hearing evidence that shows she needed a cane *during* the claims period. White was referred to PT after her meniscectomy. Doc. 6-20 at 30.  She argues that the Appeals Council erred in not considering her gait and ambulation training as evidence of her condition during the claim period. *See* Doc. 10 at 30-31. However, this evidence shows only that she trained her gait and ambulation after a knee surgery on December 29, 2022, which has no relation to White's general condition prior to her December 31, 2022 DLI. *See* Doc. 6-20 at 30-32. Other evidence White points to suffers the same fate, Doc. 10 at 10; *see* Doc. 6-14 at 2-4 (physical therapy records from surgery referral); Doc. 6-15 at 20-22 (same); Doc. 6-25 at 105-106 (orthopedic post-op), and she does not explain why, in light of her knee surgery, orthopedic post-op evidence or physical therapy evidence relating to a knee surgery is chronologically relevant. Lastly, White cites physical therapy records related to treatment for vertigo, Doc. 10 at 10; Doc. 6-19 at 3-10, with no explanation as to why her vertigo in May 2024 relates to the claim period of June 2017-December 2022.

White has not explained why evidence of cane or walker use from 2023-25 following knee surgery is chronologically relevant to a claim of disability from June 30, 2017, through December 31, 2022.  These PT and orthopedic post-op records

have no bearing as to whether White was disabled prior to December 31, 2022, and the Appeals Council therefore did not err. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (finding that medical records were not chronologically relevant because they consisted of progress notes regarding treatment which did not relate to the claim period).

## B. Dr. Teschner Opinion

White also argues the Appeals Council erred in its determination that the medical opinion of Dr. Teschner was not chronologically relevant. The Appeals Council will only review additional evidence that is chronologically relevant, new, and material—there must be a "reasonable probability that the additional evidence would change the outcome of the [ALJ] decision." 20 C.F.R. § 404.970(a)(5). Even assuming Dr. Teschner's opinion would have been chronologically relevant, this does not warrant remand because White has not shown that the opinion had a reasonable probability of changing the outcome of the ALJ's decision.[2]

In January 2025, Dr. Teschner reviewed White's medical records from June 2017 to January 2025 and filled out a physical capacities form. Doc. 6-12 at 81-87.

---

[2] In her reply, White argues that this Court cannot affirm the Appeals Council's decision by relying on rationale that the Appeals Council did not expressly indicate. Doc. 13 at 17-24. White's argument and reliance on *Securities and Exchange Commission v. Chenery Corporation*, 318 U.S. 80, 95 (1943), are flawed. Unlike an ALJ, the Appeals Council is under no obligation to state its reasons for denying review of a claim. *See Mitchell*, 771 F.3d at 784. There is "no limit on [the Court's] review of the Appeals Council's decision denying review," *see Minton v. Soc. Sec. Admin., Comm'r*, No. 24-13864, 2025 WL 3213390, at *3 (11th Cir. Nov. 18, 2025), and the Court may affirm the Appeals Council's denial of review on grounds different than those articulated, *see Pruitt*

18

After listing the medical records she reviewed and White's medical conditions, she opined that White had extreme functional limitations and that she required the use of a cane for both standing and walking. *Id.* at 86. Dr. Teschner checked a box that these limitations date back to June 30, 2017, the beginning of the relevant period. *Id.*

White does not explain why this opinion had a reasonable probability of changing the outcome of the ALJ decision—she argues that it is chronologically relevant and that the Court may not consider whether it is material. *See generally* Docs. 10, 13. White therefore has not met her burden to make a showing as to materiality. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

Despite her lack of argument, the Court has considered Dr. Teschner's opinion in light of the ALJ decision and determined there is no reasonable probability it would have changed the outcome. The ALJ explicitly considered White's testimony regarding her limitations and considered the same medical records reviewed by Dr. Teschner. *See* Doc. 6-2 at 42-60; Doc. 6-12 at 85. Considering White's testimony and the medical record, the ALJ found that the treatment notes do not show "chronic pain as she indicated at her hearing" but rather show "acute issues that resolved with treatment or are currently controlled with medication and treatment." Doc. 6-2 at 48. As explained above, the ALJ also found that White's alleged functional limitations

---

*v. Soc. Sec. Admin., Comm'r*, No. 21-13809, 2023 WL 196015, at *5 (11th Cir. Jan. 17, 2023); *Smith v. Soc. Sec. Admin., Comm'r*, No. 22-11407, 2023 WL 6938521, at *9 (11th Cir. Oct. 20, 2023).

19

were inconsistent with the majority of the record showing normal gait and stance. *See supra* at 8-9.

Dr. Teschner's check-the-box form noting extreme functional limitations does not undermine the ALJ's decision. First, Dr. Teschner does not explain how, from the review of the same medical records, she found such extreme limitations. There is no explanation linking the conclusions to supporting medical records and this opinion therefore does not show a reasonable probability that the result would change. *See Minton*, 2025 WL 3213390, at *4. Second, the blanket assertion of extreme limitation is inconsistent with the record: White's doctors documented that she had a normal gait in 2021, Doc. 6-38 at 16, 38, and that White "walk[ed] daily and liv[ed] an active lifestyle" in 2022, Doc. 6-2 at 48. It is thus impossible that all the disabilities described in Dr. Teschner's opinion date back to June 30, 2017. And without an explanation as to why Dr. Teschner concluded that this extreme limitation dates back to June 30, 2017, there is no indication that this would have changed the ALJ's decision. *See Hargress*, 883 F.3d at 1310. The opinion of Dr. Teschner thus does not render the Appeals Council decision wrong nor does it "render[] the denial of benefits erroneous." *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007).

## C. Records of Cane Use During Claim Period

White contends the Appeals Council erred in finding that certain evidence showing cane use was not material. Doc. 10 at 28-29. White cites submitted evidence showing cane exercises: cane flexion, cane ER, cane chest press, cane to ball rack, cane supine chest press, and supine cane flex. *Id.* at 7-8. She also cites additional evidence showing some use of a cane or other assistive device. She alleges that this evidence is material because it directly addresses her need for a cane during the claims period and that, in light of this evidence, there is a reasonable probability the ALJ would have found a cane medically necessary. *Id.* at 28-29.

The Appeals Council did not err in finding that this evidence was not material. Doc. 6-2 at 4. As explained in Part I, the ALJ is not required to consider the need for an assistive device unless the claimant establishes it is medically necessary. *Supra* at 6-7. Evidence of sporadic cane use, Doc. 10 at 9, does not establish medical necessity. *Supra* at 6-7. Further, there was already evidence of sporadic cane use and self-reported cane use in the record, thus there is no indication that this additional evidence would have changed the ALJ's analysis. *See supra* at 8-9. White also submitted evidence of cane exercises. Doc. 10 at 7-8. These exercises were various physical therapy movements to improve mobility and pain in her right shoulder, Docs. 6-4, 6-5, 6-8, and White expressly acknowledges that treatment notes report she did the exercises to "continue improving ROM of the R shoulder," Doc. 10 at 8.

21

These records do not relate to White's need for an assistive device to walk and do not establish the medical necessity of a cane. The Appeals Court therefore correctly denied review of White's claim because the evidence did not have a reasonable probability of changing the ALJ's decision.

The Appeals Council is not required to consider evidence that is not material and chronologically relevant, and White therefore failed to show reversible error: The medical opinion of Dr. Teschner and the cane evidence during the relevant period was not material, and the cane evidence postdating the relevant period was not chronologically relevant. *See Hargress*, 883 F.3d at 1309-10.

## CONCLUSION

For the reasons discussed above, the Court finds that, through the correct application of the relevant standards, the ALJ's decision is supported by substantial evidence, and the Appeals Council did not err in denying review. Thus, the Court **AFFIRMS** the Commissioner's decision.

**DONE** and **ORDERED** this 24th day of July, 2026.

_____
**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE

22